**Justin Steffen, OSB #122411**
*Attorney for Plaintiff*
Steffen Legal Services, LLC
2100 SE Lake Rd. #5
Milwaukie, OR 97222
971-570-9225
info@steffenlegal.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LAUREN HUBLER,**<br><br>        Plaintiff,<br><br>v.<br><br>**NIKE, INC.,**<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>42 USC 2000e<br>29 USC 206(d)<br>ORS 659A.030(1)(b)<br><br>**AMOUNT PRAYED FOR: $6,000,000**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF, through her attorney Justin Steffen, bring this COMPLAINT against Defendant and alleges as follows:

**JURISDICTION AND VENUE**

1. At all times material to this complaint, Plaintiff was employed by Defendant in the Portland Division of the District of Oregon and Defendant has been headquartered in the Portland Division of the District of Oregon. This court has original jurisdiction of the federal claims contained in this Complaint pursuant to 28 USC 1331, 28 USC 1391(b)-(c), and 42 USC 2000e-5(f)(3). This court has supplemental jurisdiction of the Oregon law claims pursuant to 28 USC 1367.

2. Plaintiff has exhausted her administrative remedies in relation to the claims contained in this complaint and was issued a 'right to sue' letter from the Equal Employment Opportunity Commission ('EEOC') on September 12th, 2022. Plaintiff and Defendant entered into a binding tolling agreement related to the non-EPA claims in this Complaint, which tolls their applicable statutes of limitation until December 29th, 2023.

## BACKGROUND

3. Defendant, Nike, Inc., is one of the largest athletic apparel corporations in the world, with their headquarters ('Nike Headquarters') located in Beaverton, OR. Defendant's Fiscal Year ('FY') runs from June 1st to May 31st. For several years, Defendant has fostered a discriminatory work environment that devalues women, pays them less than their male counterparts, offers them lower starting salaries than their male counterparts, and denies women promotional opportunities that are otherwise available to men with equal or fewer qualifications. Defendant's policies and practices have either been intentionally discriminatory towards women or have had a disparate impact on women.

4. Defendant has been aware of the discriminatory practices of their executive leadership since at least 2018, but has willfully failed to take all necessary steps to rectify this problem. At all times material to this Complaint, Plaintiff worked at Nike Headquarters in their Finance department. During this time, she has been subject to the discriminatory practices of Nike's executive leadership. Defendant's practices constitute a continuing violation of federal and state anti-discrimination statutes that began upon Plaintiff's initial employment and continued until Plaintiff left her position with Defendant in February of 2021.

## FACTUAL ALLEGATIONS

5. Defendant's executive leadership consists of the CEO, President, and several Vice-Presidents. Below this upper level there are numerous senior managers, classified as either Senior Directors or Directors. In fiscal year 2017, 71% of Defendant's Vice-Presidents were men

and 62% of its Directors and Senior Directors (as a single group) were men. Upon information and belief, the percentage of male Senior Directors is much higher than 62%.

6. In addition, at all times material to this complaint, Defendant placed all employees at Nike Headquarters who are below the vice president level into 'band levels'. There are six band levels, with each level assigned a letter that spells out the word, 'VALUES'. The 'V' level is the lowest and the 'S' level is the highest. All salaried corporate employees are in either the L, U, E, or S-Band. All Directors are in the E-band level and all Senior Directors are in the S-band level. These band levels uniformly affect the salaries, benefits, and annual bonuses of employees at Nike Headquarters. As the band level increases, the annual bonus, stock option grants, and salary range also increases.

7. Upon information and belief, as the band level increases, the percentage of women in that level decreases.

8. Employees at Nike Headquarters receive two forms of cash compensation: salary and an annual bonus. An employee's band level impacts salary, as there is a salary range associated with each band level. Some employees also receive stock options. The value of the stock option awards increases as the band level increases.

9. Band level also impacts an employee's annual bonus, which is determined according to Defendant's 'Performance Sharing Plan' ('PSP Bonus'). At all times material to this Complaint, the PSP Bonus was calculated according to a centrally-determined, uniform formula that consists of two components. One component is the 'Team Award' and the other component is the 'Discretionary Award'. Both components include an input based on the employee's band level. Both components also include an input based on the amount of salary paid during the relevant fiscal year. The Discretionary Award component also includes an input that is based on

the employee's annual rating (see below). Thus, the higher the band level, salary, or annual rating, the greater the PSP Bonus.

10. Plaintiff holds a Bachelor's Degree in accounting and economics from the University of Oregon. Plaintiff began working for Defendant at Nike Headquarters in 2004. Prior to that she worked at a certified public accounting firm, as well as working for Hollywood Video in their internal auditing department. Plaintiff's work history with Defendant is as follows:

11. In 2004 she began as the Corporate Audit Lead. In November 2006, she became the Assistant Controller of the Americas. Both of these roles were U-band level. In February 2008, she took the role of Finance Manager for the Nike Athletic Training category, which was also a U-band position. In 2010, Plaintiff was the only U-band category lead in this department, while the other five leaders of categories were all E-band level. Plaintiff asked to be moved to E-band, but she was denied.

12. In August 2011, she became the Finance Director for Global Sales and Operations, which was an E-band position. In June 2012, she took the role of Finance Director for the Nike Sportswear category. In January 2014, she became the Finance Director of Global Supply Chain, where she performed work at the Senior Director (S-band) level, but was still only classified as an E-band level Director. In November 2016, she started a role as Director for the Strategic Enterprise Capabilities function, where she continued to perform work at the Senior Director level but remained as a Director until March 2020. From March 2020 until she left Nike in February 2021, she was Senior Director for the Strategic Enterprise Capabilities function at the S-band level.

13. When Plaintiff first began her employment with Defendant, Defendant had a policy of asking applicants for their prior salary. This perpetuates unequal pay because women have historically been paid less than their male peers. Upon information and belief, Plaintiff was paid a lower starting salary than her male peers with equal qualifications. In 2007, Plaintiff was given an upward adjustment to her salary because she was at the very low end of the U-band salary level.

14. Starting salary for employees of Defendant affects their future pay raises and bonuses. The higher a person's initial salary, the higher range of future bonuses and other benefits that will be available to them.

**PLAINTIFF REMAINS IN A LOWER BAND LEVEL DUE TO HER GENDER**

15. Since January of 2014, Plaintiff should have been in the S-band level as a Senior Director, but remained a Director in the E-band level due to her gender. In her role as the Finance Director for Global Supply Chain (January, 2014 – November, 2016), Plaintiff performed similar work to the male peers on her direct team (who were all S-band level). She also performed similar work to her male peers with the same role in other geographic locations, all of whom were S-band level.

16. During this time, the vice president who Plaintiff reported to (Tom Hildrum), had four to six direct reports: two-four males who were all at the S-band level, as well as two females (Plaintiff and Kathy Strege) who were at the E-band level.

17. When Plaintiff left her role as the Finance Director for Global Supply Chain in November of 2016, she was replaced by a male employee named Kevin Seibers who received an S-band level/Senior Director position for the same position vacated by Plaintiff. Mr. Seibers performed substantially the same work as Plaintiff, but had less experience and fewer qualifications than Plaintiff in that particular role.

18. Ms. Strege's job title while she worked on Plaintiff's team was the Leader of Workplace

Design and Connectivity. When Ms. Strege left this position, she was replaced by a female employee named Courtney Keating who was also an E-band Director. Ms. Keating was involuntarily removed from this position and was replaced by a male employee, Alisdair Maden, who took this position as an S-band Senior Director, even though the last two female employees who held this position were E-band Directors, performing substantially the same work as Mr. Maden. Both Ms. Strege and Ms. Keating requested that their position be upgraded to an S-band position, but were denied.

19. Between 2016 and 2020, when Plaintiff was Director for the Strategic Enterprise Capabilities function, she performed the work of a Senior Director and should have been at the S-band level, but remained an E-band Director due to her gender. During this time, she performed similar work to her male peers, where were all Senior Directors at the S-band level.

20. Due to Plaintiff being in a lower band level and having a lower starting salary compared to her male peers, she has lost the following benefits between 2004 and 2021:

- Salary: Plaintiff has made less than her male peers because she received a lower starting salary based on Defendant's policy of asking for prior wage history for all of their new hires. She has also made less salary due to being kept at the E-band level, when she was performing S-band level work. Even when she was finally promoted to a Senior Director, Plaintiff was still earning a lower salary because she had less time in the S-band position, than she would have had if she had not been treated differently than her male peers.

- Yearly bonuses: Bonuses are based, in part, on an employee's annual salary. Since Plaintiff's salary was lower due to her gender, her annual bonus was also lower, even after she became a Senior Director.

**COMPLAINT**
Page 6 of 13

- Stock options: Employees in the E-band and above receive stock option grants. The amount of stock options awarded is more for S-band employees than it is for E-band employees. If Plaintiff had been an S-band employee, she would have received more stock option grants.

## PLAINTIFF RECEIVES A LOWER COACHING FOR EXCELLENCE RATING DUE TO HER GENDER

21. At Nike Headquarters, there is an evaluation rating for headquarter employees known as Coaching for Excellence ('CFE'). On information and belief, all employees with a Vice-President, Senior Director, Director, Manager, or lower-level title are given a rating. There are five possible ratings: Exceptional, Highly Successful, Successful, Inconsistent, and Unsatisfactory. These ratings are based on a curve, so there is a limited number of employees in any one department who can receive the Exceptional and Highly Successful ratings.

22. In the Finance department, each employee is initially given a rating by their direct manager. These initial ratings are sometimes adjusted in 'calibration meetings' in order to comply with the curve-based ranking system. Upon information and belief female employees receive lower ratings during these meetings compared to the male employees.

23. In FY 2018, Plaintiff attended one of these calibration meetings, where she was the only female in the meeting. During this meeting ratings were changed and the female Finance employees regularly got lower scores than the male finance employees, despite having equal or better work performance. Women received lower ratings due to perceptions that they are too detailed or too quiet. During this meeting, Plaintiff tried to advocate for her team, but her male peers dominated the meeting. In FY 2019, the calibration meetings were limited to those in S-band and above, so Plaintiff was excluded from the meeting due to being kept at the E-band level.

24. In FY 2019, Plaintiff received a Successful rating, despite receiving glowing reviews from the teams she supported. Upon information and belief, Plaintiff received lower scores than her male peers who performed at a lower level than Plaintiff. Upon information and belief, CFE scores are adjusted more often in favor of male employees.

**WOMEN ROUTINELY RECEIVE LOWER RATINGS BASED ON OTHER POLICIES**

25. In addition to the CFE rating system, Defendant has also utilized the 'Leadership Potential Assessment' ('LPA'), which was replaced by the 'Talent Segmentation' rating system in 2018. From FY 2012 – FY 2018, Plaintiff was ranked in the middle of the LPA as 'mid-performance, mid-potential'. This is despite the fact that Plaintiff received the following accolades between 2016-2020:

- In 2016, Plaintiff was selected for the 'Women of Operations Leadership Development Program'.

- In 2018, Plaintiff was nominated for Nike's Amplify program, which only has four spots eligible for Finance employees (out of approximately 1,600 total Finance employees).

- In 2018, Plaintiff was personally selected by the Chief Information Officer to speak on authentic leadership in the Global Operations' 'See It, Be It' series as an emerging leader in Operations.

- In 2018, Plaintiff was informed by HR employee Erin Sanasi that she was in the highest Talent Segmentation category. In 2019, this was confirmed by VP Catherine Dunleavy.

- In 2020, Plaintiff received a $50,000 discretionary stock grant for being among the top talent in the Finance department.

- In 2020, Plaintiff was asked to be on a panel for women in merchandising as a mentor.

**COMPLAINT**
Page 8 of 13

- In 2020, Plaintiff was selected by her peers for Nike's Woman of the Month spotlight award for commitment, integrity, and leadership.

26. These systems were annual ratings designed to rate an employee's potential. The LPA had nine specific ratings and the Talent Segmentation system has four specific ratings. On information and belief, the ultimate decision-makers for ratings of employees in the U through S Bands for LPA are in the Vice-President and higher bands, including vice presidents from Human Resources. Upon information and belief, female employees received lower LPA and Talent Segmentation ratings compared to their male peers.

**PLAINTIFF IS DENIED PROMOTIONS DUE TO HER GENDER**

27. In 2014, Plaintiff, in her role as Finance Director of Global Supply Chain requested that she be promoted to Senior Director. This would put her at the same level as her male peers on her direct team, as well as her male peers in other geographies. Many of Plaintiff's male peers agreed that she should be a Senior Director. The vice president Plaintiff reported to at the time, Tom Hildrum, said he would see what he could do. However, no promotion was given to Plaintiff at this time.

28. From December of 2014 through June of 2015, Plaintiff was on maternity leave. In 2016, an organizational chart published by the VP of Supply Chain showed Plaintiff's position as a Senior Director role, even though Plaintiff was still being paid as an E-band Director.

29. Later in 2016, Plaintiff learned that her current position would be upgraded to a Senior Director, S-band role. However, this role was taken away from Plaintiff and given to an E-band, male employee named Kevin Siebers. Mr. Siebers did not have to interview for this position and no job posting was ever listed.

30. After learning of Mr. Siebers' promotion, Plaintiff applied and interviewed for the Finance Director of Manufacturing Revolution, an E-band role. Tom Hildrum was the hiring vice president. Plaintiff did very well in this interview. The senior vice president in charge of the manufacturing division even asked her when she could start in this position, indicating that she seemed to be the candidate selected.

31. However, two weeks later, the position was changed to an S-band position and given to a male employee with less experience than Plaintiff named Matthew Tuski. Mr. Tuski did not even interview for this position.

32. In 2018, Plaintiff considered applying for the Finance Director Air MI Role at the request of VP Daniel Solbach. This role was an E-band level, but Plaintiff and other employees thought the scope of this job warranted an S-band level. This includes Nicole Hogan, the director who was leaving the position. Ms. Hogan informed Plaintiff that she had been advocating for it to be an S-band position for over a year before she left, due to the size and complexity of the position. Plaintiff made her opinion that this should be an S-band position known to Mr. Solbach and HR personnel, but was informed that it would remain an E-band level. Therefore, Plaintiff did not apply for this position.

33. Shortly after Plaintiff decided not to apply, this position was filled by a male employee at the S-band level.

34. The denial of these promotion opportunities, as well as all the other facts alleged above represent part of the continuing practice of discrimination at Nike Headquarters, which continued up until the time Plaintiff left her employment with Defendant.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Unlawful Discrimination – disparate impact – 42 USC 2000e-2)

35. Defendant's policies as described above have had a disparate impact on female employees of Defendant. These policies have had a continuing impact on Plaintiff beginning in 2004 and continuing throughout her entire career with Defendant. Plaintiff has suffered economic damages as a result of these policies in an amount to be proven at trial, but not to exceed $3,000,000.

### SECOND CLAIM FOR RELIEF
(Unlawful Discrimination – disparate treatment 42 USC 2000e-2)

36. Defendant has discriminated against Plaintiff by paying her a lower salary, giving her reduced benefits, denying her promotions, and keeping her in a lower band level compared to her male peers because of her gender, as described above. As a result of this discrimination Plaintiff has suffered economic damages in an amount to be proven at trial, but not to exceed $3,000,000.

### THIRD CLAIM FOR RELIEF
((Unlawful Discrimination – disparate impact – ORS 659a.030(1)(b))

37. Defendant's policies as described above have had a disparate impact on female employees of Defendant. These policies have had a continuing impact on Plaintiff beginning in 2004 and continuing throughout her entire career with Defendant. Plaintiff has suffered economic damages as a result of these policies in an amount to be proven at trial, but not to exceed $3,000,000.

### FOURTH CLAIM FOR RELIEF
((Unlawful Discrimination – disparate treatment – ORS 659a.030(1)(b))

38. Defendant has discriminated against Plaintiff by paying her a lower salary, giving her reduced benefits, denying her promotions, and keeping her in a lower band level compared to her male peers because of her gender, as described above. As a result of this

discrimination Plaintiff has suffered economic damages in an amount to be proven at trial, but not to exceed $3,000,000.

## FIFTH CLAIM FOR RELIEF

(Equal Pay Act Wage Discrimination – 29 USC 206(d)(1))

39. Defendant has paid Plaintiff a lower salary and given her reduced benefits compared to her male peers, as described above. Plaintiff has performed substantially similar work as similarly situated male employees, but was paid less. In paying Plaintiff less, Defendant acted willfully and Plaintiff has suffered economic damages in an amount to be proven at trial, but not to exceed $3,000,000. Plaintiff is also entitled to liquidated damages in an equal amount, pursuant to 29 USC 216(b).

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**COMPLAINT**
Page 12 of 13

## PRAYER FOR RELIEF

14.

WHEREFORE, Plaintiff requests the following relief:

A money award judgment entered against Defendant for the following:

- Economic damages in an amount not to exceed $3,000,000.

- Liquidated damages in an amount not to exceed $3,000,000, pursuant to 29 USC 216(b).

- Plaintiffs' reasonable costs and attorney's fees associated with bringing this action, pursuant to 42 USC 2000e-5(k), ORS 659A.885(1), and 29 USC 216(b);

- Any and all other relief the Court deems just and reasonable under the circumstances.

Respectfully submitted on: 12/28/2023

By: s/ Justin Steffen
Justin Steffen
*Attorney for Plaintiff*
Steffen Legal Services, LLC
205 SE Spokane St. #300
Portland, OR 97202
Tel: 971-570-9225
info@steffenlegal.com

**COMPLAINT**
Page 13 of 13