LAURA E. ROSENBAUM, OSB No.110061
laura.rosenbaum@stoel.com
RYAN S. KUNKEL, OSB No.154671
ryan.kunkel@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAUREN HUBLER, | Case No.:  3:23-cv-01974-SB |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| NIKE, INC., | (ORAL ARGUMENT REQUESTED) |
| Defendant. | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
153484252.1 0063718-00403

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

LOCAL RULE 7-1 CERTIFICATION ..................................................................... 1

MOTION..................................................................................................................... 1

MEMORANDUM ...................................................................................................... 1

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................. 3

    A.    Plaintiff's finance role in Nike's SEC program ...................................... 3

    B.    Nike expanded SEC in late 2019 and early 2020 .................................. 3

    C.    Nike created a new Senior Director position for Plaintiff ..................... 4

    D.    Plaintiff resigned in February 2021 ....................................................... 6

    E.    Procedural history .................................................................................. 6

III. ARGUMENT....................................................................................................... 6

    A.    Plaintiff's Equal Pay Act claim fails..................................................... 7

        1.    Plaintiff's role in the SEC Program was not substantially equal to the roles of the comparators she identifies................................. 8

        2.    Any pay differential was justified by seniority in role ........................... 11

    B.    Plaintiff's disparate treatment claims also fail...................................... 14

        1.    Plaintiff's claims that her pay was discriminatory under Title VII and Oregon law fail for the same reasons as her EPA claim. .................. 14

            a.    Plaintiff's compensation was not different than similarly situated male employees ............................................................... 15

            b.    Any pay differential was for legitimate, non-discriminatory reasons....................................................................................... 16

        2.    Plaintiff's discrimination-in-promotion claim fails because she cannot identify an open position she did not receive because of her gender................................................................................................. 16

IV. CONCLUSION..................................................................................................... 17

153484252.1 0063718-00403

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Clemente v. Or. Dep't of Corr.*,
No. 04-CV-1417-BR, 2006 U.S. Dist. LEXIS 47393 (D. Or. July 7, 2006) .......................7, 12

*Coe v. Cascade Wood Components, Inc.*,
Civ. No. 86-1641-FR, 1988 U.S. Dist. LEXIS 13122 (D. Or. Nov. 23, 1988)....................7, 12

*Foster v. Arcata Assocs., Inc.*,
772 F.2d 1453 (9th Cir. 1985) .......................................................................................8, 11

*Goins v. UPS*,
No. 24-4842, 2026 U.S. App. LEXIS 712 (9th Cir. Jan. 12, 2026)................................7, 8, 15

*H. K. v. Spine Surgery Ctr. of Eugene, LLC*,
305 Or. App. 606, 470 P.3d 403 (2020)..............................................................................15

*Khanania v. Chertoff*,
172 F. App'x 710 (9th Cir. 2006).........................................................................................7

*Wachter-Young v. Ohio Cas. Grp.*,
236 F Supp 2d 1157 (D Or 2002) ......................................................................................11

**Statutes**

Equal Pay Act ...............................................................................................2, 7, 11, 14

ORS 659A.............................................................................................................15

ORS 659A.030....................................................................................................2, 6, 15

Title VII, Civil Rights Act of 1964, 42 USC § 2000E et seq. ............................................... passim

**Rules**

Fed. R. Civ. P. 56.......................................................................................................1

L.R. 7-1 ...................................................................................................................1

L.R. 7-1(a)...............................................................................................................1

**LOCAL RULE 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1(a), counsel for NIKE, Inc. ("Nike") conferred with counsel for Lauren Hubler ("Plaintiff") in good faith about Nike's Motion for Summary Judgment ("Motion").  The parties were able to resolve some of their disputes, which are reflected in the parties' stipulations ("Stipulations")[1] and are incorporated herein by reference.  After conferral, the parties were unable to resolve the remaining issues underlying this Motion.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 56, Nike moves for summary judgment dismissing Plaintiff's claims. There is no genuine issue as to any material fact, and Nike is entitled to judgment as a matter of law.

This Motion is supported by the Memorandum below, the Declaration of Ryan Kunkel ("Kunkel Decl.")[2], the Declaration of Carrie Miller ("Miller Decl."), the Declaration of Akanksha Swami ("Swami Decl.") and the pleadings on file.

**MEMORANDUM**

**I.  INTRODUCTION**

This is a case about experience.  Plaintiff, a well-compensated Nike employee who voluntarily resigned in 2021, was paid the same as men with similar experience and paid less than those with more experience.  She admits that experience is the primary factor driving those pay differences.  Yet she asserts pay discrimination claims unsupported by any evidence and

---

[1] These Stipulations are being filed with this Motion, and reflect the parties' agreement to narrow the issues and claims before the Court.  *See* Declaration of Ryan Kunkel, ¶ 4.

[2] Cited excerpts from Plaintiff's deposition ("Pl. Dep.") and the deposition of Erin Sanesi ("Sanesi Dep.") are attached as Exhibits 1 and 2, respectively, to the Kunkel Declaration.

asks the Court to infer gender bias simply because her compensation was lower than some men (admittedly based on legitimate reasons like relevant job experience).

In the face of Plaintiff's admissions and other undisputed facts, the parties entered a number of stipulations that significantly narrow the issues for summary judgment and resolve some of Plaintiff's five claims for relief. *See* Stipulations Nos. 1-5. As a threshold matter, Plaintiff's disparate-impact theories under her First and Third Claims for Relief are no longer at issue. *See* Stipulation No. 4. The Court should dismiss those claims with prejudice. The Stipulations further result in limiting Plaintiff's claims to: (1) an Equal Pay Act claim for alleged damages in January and February 2021; and (2) disparate treatment claims under Title VII and ORS 659A.030 based on alleged pay disparities and promotional opportunities from September 29, 2019 through the end of Plaintiff's employment in February 2021.[3] *See* Stipulations Nos. 1–4; FAC ¶¶ 36, 38-39.

As discussed in detail below, Plaintiff's pay disparity claims fail for two independent reasons: Plaintiff cannot identify a proper male comparator because the roles she cites were materially different from her own; and even if she could, the undisputed material facts show that tenure-in-role and experience—not gender—explain the pay differences on which she relies. Plaintiff's failure-to-promote claim also fails because she admits Nike's hiring decisions were unrelated to gender, and because she received the promotion she desired before she resigned.

Plaintiff's claims fail as a matter of law, and Nike is entitled to summary judgment. Nike respectfully requests the Court grant this Motion and dismiss all of Plaintiff's claims.

---

[3] As set forth in the Stipulations, the parties agree that Plaintiff's remaining claims are time-limited because of the applicable statutes of limitation. Should any of her claims survive this Motion, the Court should limit the claims to the time periods referenced here.

## II.  FACTUAL BACKGROUND

**A.    Plaintiff's finance role in Nike's SEC program**

Plaintiff started working at Nike in 2004, and by 2014, she served as the Finance Director of Global Supply Chain.  Pl. Dep., 98:20–99:4, 131:23-132:2.  In 2016, she became the Director of Finance for the Strategic Enterprise Capabilities ("SEC") program.  Pl. Dep., 41:20–24.

SEC was a new program focused on the implementation of an upgraded Enterprise Resource Planning ("ERP") system.  Pl. Dep., 44:9-14; Miller Decl., ¶ 12.  A new ERP would provide additional and enhanced capabilities to improve efficiency with the global distribution of Nike product.  Pl. Dep., 45:5-12; Miller Decl., ¶ 12.  To support Nike's transition to a new ERP, Plaintiff's role involved building the finance support for the program, helping develop the business case for the ERP transition, and managing the financials associated with the program itself.  Pl. Dep. 44:15–17, 46:3–6.  Initially, the SEC program struggled to deliver quickly from a supply chain perspective.  Pl. Dep., 45:7-12; Miller Decl, ¶ 14.

**B.    Nike expanded SEC in late 2019 and early 2020**

In late 2019 and early 2020, the SEC program underwent a major shift in both its goals and scope.  Under new SEC program leadership, the program moved away from an internally driven implementation model toward a more structured approach designed to accelerate progress and better achieve its intended value.  Miller Decl., ¶ 14.

A key turning point was the decision to engage an outside partner, Accenture, which specialized in integrating separate, disparate systems into a single, functional ecosystem.  This significantly expanded SEC's scope and ambitions, but also introduced new complexity.  Governance requirements increased, and managing the new relationship with Accenture became a substantial responsibility.  Miller Decl., ¶¶ 14-16.

Page 3 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

With the new partnership with Accenture, SEC evolved into a highly cross-functional initiative requiring greater coordination across the business to prepare a new deployment strategy and rollout around the world. An updated business case for this expansion was presented to and approved by Nike's Board of Directors in late 2019. Miller Decl., ¶¶ 15-16.

## C.    Nike created a new Senior Director position for Plaintiff

As the SEC program's evolution, a new finance leader would be required to support the program as it moved from the planning phase to managing cross-functional strategy and complex implementation. Miller Decl., ¶ 17. Such responsibility was aligned to a Senior Director level role, and accordingly, Plaintiff's supervisor, Fawwad Quereshi, supported Plaintiff's career growth and advocated for Nike to create a new role, elevating[4] Plaintiff's position from Director to Senior Director based on this expanded scope and responsibilities. Pl. Dep., 63:7-14; Pl. Ex. H; Sanesi Dep., 13:4-13 (Senior Director has larger scope than Director); Miller Decl., ¶ 17.

Plaintiff had already been seeking opportunities to work at the Senior Director level. In late 2019, she interviewed for two Senior Director level roles outside of SEC[5] but was excited when Nike instead offered her the new Senior Director of SEC Finance position because she preferred to remain in SEC. Pl. Dep., 165:6-21. Plaintiff started as Senior Director, SEC Finance, in March 2020. Pl. Dep., 57:9-13; Pl. Ex. H. She did not seek any further promotion after receiving this job. *See* Stipulation No. 5.

---

[4] At this time at Nike, roles were situated in different levels, which were called "bands." Director roles were considered "E" band, and Senior Director roles were one step higher at "S" band. Pl. Ex. C. Roles were sometimes elevated – or "upbanded" - to a higher band-level based on an expanded scope of responsibility. Miller Decl., ¶¶ 3, 17; Sanesi Dep., 14:7-15:14.
[5] Plaintiff admits Nike's hiring decisions for these roles was not discriminatory. Stipulation No. 5; Pl. Dep., 78:1-5, 79:1-5.

During Plaintiff's employment, each band at Nike had an associated expected compensation range.  When Plaintiff became a Senior Director, her compensation was increased to sit within the range for her new band.  Plaintiff's base compensation was $210,000, and, like all Senior Directors, she was eligible for an annual bonus of 30% of her base compensation depending on company performance, and an annual stock award of $110,000 vested over four years.  Pl. Dep., 119:20-120:5; Pl. Ex. H; Miller Decl., ¶ 20.  Plaintiff's base salary in her new role was consistent with other new Senior Directors within her part of the organization, based on time in role and experience at that level, and regardless of gender.  Pl. Dep., 99:10-100:1 (internal hires, men and women, set to low end of range); Miller Decl., ¶ 20.  Indeed, her base salary and overall compensation package (including bonus and stock eligibility) were nearly identical to those of a male employee, Daniel Jow, who was hired as a new Senior Director in Nike Finance and Technology a few months before her.  *E.g.*, Pl. Dep., 121:19-122:4; Swami Decl., ¶ 3.  As Plaintiff and Mr. Jow gained experience as Senior Directors, their base salary would be expected to increase, as was the case for other Senior Directors with longer tenure and experience in their roles.  *See e.g.*, Pl. Dep., 125:12-18 and 126:25-127:7 (the longer an employee is in role, the higher their compensation); Miller Decl., ¶ 20.  Plaintiff testified that time in role is the primary factor for determining compensation within a band level.  Pl. Dep., 209:8-209:18 ("primary" reason male Senior Directors were paid more than Plaintiff was tenure in role); Pl. Dep., 298:17-21 ("Q. And is it fair to say that the longer you're in a band, your compensation will continue to grow even though you're -- you stay within that band.  Is that fair? A.  Yes.").

**D.      Plaintiff resigned in February 2021**

In February 2021, less than a year after she was promoted to Senior Director, Plaintiff

resigned to take a job with Microsoft.  Pl. Dep., 185:21-186:16; 193:22-24.  Plaintiff does not

assert any claims against Nike related to her departure.  Pl. Dep., 185:21-186:1.  To the contrary,

she emailed her supervisor at the time:

> "I am super excited [to] get the opportunity to experience a new
> company and a new role, as well as have the opportunity to lead a
> large team. It is definitely the best choice for me although it does
> break my heart to leave Nike and the company I not only grew up
> in, but also a company with people that I consider to be my family.
> I will miss everything about Nike!"

Pl. Ex. K.

Nike backfilled Plaintiff's role on an interim basis with Carrie Miller (who is female),

who had been working under Plaintiff in a director role.  Miller Decl., ¶¶ 18-20.  Plaintiff

described Ms. Miller as a "great choice" to succeed her.  Pl. Dep., 189:14-18.

**E.      Procedural history**

On April 28, 2021, Plaintiff filed an EEOC charge alleging gender discrimination in

violation of Title VII and ORS 659A.030.  Stipulation No. 1.  Plaintiff requested the EEOC

dismiss her charge, and the EEOC issued a Notice of Right to Sue without finding substantial

evidence to support Plaintiff's allegations.  Plaintiff initiated the instant action in this Court on

December 28, 2023.

### III.  ARGUMENT

The undisputed material facts undermine all of Plaintiff's claims.  Plaintiff's pay was the

same as other employees with similar experience as Senior Director.  Her pay was lower than

others with longer tenure and more experience in Senior Director roles at Nike.  Plaintiff admits

that experience is the primary factor explaining the pay difference.  Her promotion-related claims

fail because there is no dispute that Nike did in fact promote Plaintiff, and she cannot identify a single other position during the relevant time period she applied for and did not get because of her gender. Plaintiff's claims that her pay was discriminatory based on gender and that Nike failed to promote her because of her gender fail as a matter of law. Nike is entitled to summary judgment dismissing all of her remaining claims.

## A.     Plaintiff's Equal Pay Act claim fails

Under the Equal Pay Act, plaintiffs have the burden to show that "employees of the opposite sex were paid different wages for equal work." *Goins v. UPS*, No. 24-4842, 2026 U.S. App. LEXIS 712, at *5 (9th Cir. Jan. 12, 2026). The plaintiff "must demonstrate that the compared jobs are 'substantially equal,' which courts evaluate by looking at (1) whether the jobs share a 'common core of tasks' and (2) whether any additional tasks make the jobs 'substantially different.'" *Id.* (citation omitted). If the plaintiff makes that showing, the employer may defeat the claim with evidence that any pay disparity is explained by a reason "other than sex."

Courts have routinely recognized that experience constitutes a legitimate reason "other than sex." *Coe v. Cascade Wood Components, Inc.*, Civ. No. 86-1641-FR, 1988 U.S. Dist. LEXIS 13122, at *23 (D. Or. Nov. 23, 1988) (plaintiff "was paid less than her comparators . . . but these differentials were justified because . . . each had more experience"); *Clemente v. Or. Dep't of Corr.*, No. 04-CV-1417-BR, 2006 U.S. Dist. LEXIS 47393, at *13 (D. Or. July 7, 2006) (a "neutral legitimate business reason; i.e., superior experience, education, and ability may justify pay disparities that are not based on gender"); *Khanania v. Chertoff*, 172 F. App'x 710, 711 (9th Cir. 2006) (affirming summary judgment because employer demonstrated pay disparity was due to "markedly disparate levels of experience and qualifications").

Plaintiff's EPA claim fails because (1) Plaintiff cannot identify any male employees with substantially equal jobs who were paid more than she was; and (2) experience, not gender, explains any differences between Plaintiff's compensation and the pay of similarly situated male employees.

### 1. Plaintiff's role in the SEC Program was not substantially equal to the roles of the comparators she identifies

Plaintiff claims she should have been paid the same as four men who led different functions within Nike Finance:  Alisdair Maden, Jim Marr, Greg Merrill, and Daniel Jow.  Pl. Dep. 198:7-15.  Like Plaintiff, each were in Senior Director-level roles within Nike Technology and Finance, but that is where the similarities end.

Under the EPA, roles do not share a common core of tasks if the positions at issue "were created at different times, for substantially different purposes." *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1466 (9th Cir. 1985).  In *Foster*, the plaintiff's role managed primarily one Air Force contract that was starting to phase out.  *Id.*  In contrast, her purported comparator was hired into a newly created role, two years after the plaintiff was hired, to manage a large, *growing* contract, and, in contrast to the plaintiff's basic contract management, the comparator was hired to be a "trouble shooter" "responsible for the direct handling of problems stemming from the contract operations," which thus required "constant interaction" with the Air Force.  *Id.* In rejecting the plaintiff's EPA and Title VII claims, the court found the roles were "substantially different" because they held substantially different purposes.  *Id.; see, e.g., Goins*, 2026 U.S. App. LEXIS 712, at *5 (affirming summary judgment where plaintiff failed to show comparator roles with different job codes and skill levels were substantially equal to her role).

Here, the threshold distinction between Plaintiff's role and those of the purported comparators is their purpose and scope - SEC was a limited <u>program</u> within Nike Technology

Page 8 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
153484252.1 0063718-00403

and Finance, whereas the purported male comparators led evergreen <u>functions</u> within Nike Technology and Finance. Nike Technology & Finance was a large department that supported work across Nike business units and around the globe.  Its work was divided into separate, smaller categories, including short-term programs to execute specific deliverables, and functions that guide Nike strategy and evergreen work in respective areas.  Miller Decl., ¶ 4.

Programs, such as the SEC program in which Plaintiff worked, operated as a finite, time-bound initiative established in 2016 for a specific purpose and limited timeframe.  Miller Decl. ¶ 11.  Roles within the program can shift over the life of the program depending on the program's phase and needs, and when the program's objectives are achieved, the roles terminate and the program ends.  Miller Decl. ¶ 11.  Programs are typically led by Director-level employees because their scope is limited to developing and implementing their project and managing the day-to-day work to achieve the program's purpose.  Miller Decl., ¶ 11.  For SEC specifically, the program's focus on transitioning from one ERP to another was a limited task, and once that transition was complete, the SEC program concluded earlier this year.  Miller Decl, ¶¶ 11, 21.  Though the program's duration was longer than anticipated due to various obstacles and setbacks, that did not change its limited purpose.  Miller Decl, ¶ 21.

A "function," by contrast, operates as an ongoing, evergreen part of Nike's operations with continuing deliverables and no defined end date.  Miller Decl. ¶ 6.  Functions are typically cross-functional, and require long-range, strategic planning by Senior Director-level roles that is not necessary for a program.  Miller Decl., ¶ 10; Pl. Dep., 40:25-41:4 (S-Band had broader scope with more executive presence).

As relevant here, the *functions* led by the purported comparators Plaintiff identifies were fundamentally different than Plaintiff's SEC Finance *program*:

- Greg Merrill was the Senior Director for Strategy & Operations, the function responsible for driving Nike Tech's long- and short-term strategy.  Miller Decl., ¶ 7.  During Plaintiff's employment, this function facilitated Nike Tech's overall three-year strategic planning and the annual operating plan process, with financials treated as one component of the broader strategic plan.  Miller Decl. ¶ 7.  Strategy & Operations also partnered with other Nike strategy teams to translate Nike's business strategies into technology strategy and execution priorities.  Miller Decl. ¶ 7.

- Alisdair Maden led the FP&A Integrated Reporting function as its Senior Director, which served as the centralized financial planning and reporting function for the Nike Technology portfolio. Miller Decl. ¶ 8.  Maden's function managed the overall Nike Technology portfolio budget, with more than $1 billion in annual spend.  Miller Decl. ¶ 8.  Integrated Reporting also performed centralized short- and long-range financial planning and delivered planning outputs to Global Business Planning across the planning horizon, including CSR, AOP, budget, and monthly forecast deliverables. Miller Decl. ¶ 8.

- Jim Marr was Senior Director of Business Value Chain Domain Finance, a function which provided finance support to leaders responsible for technology enablement across business value chain areas such as supply chain, demand planning, and retail. Miller Decl. ¶ 9.  Marr's function coordinated financial targets from Integrated Reporting across various planning horizons, and acted as a strategic thought partner to several vice presidents it supports, including in connection with multiple technology programs. Miller Decl. ¶ 9.

- Dan Jow was Senior Director of Tech Foundational Domain Finance, which, similar to Business Value Chain Domain Finance, was a strategic thought partner to multiple vice presidents, though its focus was geared to technology areas such as cloud services and production support.  Miller Decl. ¶ 9.

The broader cross-functional and strategic purpose of each of these functions separates them from the limited duration and project or program-focused scope of the SEC program on which Plaintiff worked.  Just like *Foster*, in which the plaintiff's and purported comparators roles did not share a common core of tasks because they were created for different purposes and had different strategic importance, Plaintiff's role was created for a limited purpose and had a narrower strategic scope, whereas the functions are permanent strategic fixtures.  Plaintiff cannot dispute that these roles had differing responsibilities from her own and were valued differently by Nike because of their relative scope.  As a result of these differences, Plaintiff's role was not substantially equal to these four male Senior Directors.  Plaintiff's Equal Pay Act claim fails for this reason alone.

### 2.    Any pay differential was justified by seniority in role

Even if Plaintiff could show her role shared a common core of tasks with these comparators (and she cannot), her Equal Pay Act claim cannot succeed because experience as a Senior Director, not gender, explains any difference in compensation.[6]

Employers may defeat an Equal Pay Act claim by showing any differences in compensation are explained by a "factor other than sex," which "was intended to be a broad exception."  *Wachter-Young v. Ohio Cas. Grp.*, 236 F Supp 2d 1157, 1164 (D Or 2002).  Indeed,

---

[6] Plaintiff's EPA claim is limited to January and February 2021, when she was a Senior Director. Stipulation No. 3.

Page 11 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

"the Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives." *Id.* (citation and internal quotation marks omitted). Accordingly, employers may pay employees differently based on their experience. *Coe*, 1988 U.S. Dist. LEXIS 13122, at *23 (pay differential justified by difference in experience); *Clemente*, 2006 U.S. Dist. LEXIS 47393, at *13.

Compensation ranges at Nike are determined by band level and within each band, employee compensation can be influenced by multiple factors, such as job, experience and time in role, and performance. Pl. Dep., 94:17-96:2, 125:12-18 (higher compensation for tenure in role). Here, in line with this general approach, Plaintiff's compensation was similar to men with similar experience, and lower than men with more experience.

Plaintiff's salary as Senior Director was $210,000. Pl. Dep., 119:20-120:5. Mr. Jow, who became Senior Director only a few months before Plaintiff, had a salary of $210,500 at the time. Pl. Dep., 121:19-122:4. Both were paid less than their male peers who had more experience in Senior Director level roles at Nike. Specifically, Greg Merrill had been a Senior Director for approximately two years longer than Plaintiff and Mr. Jow. Swami Decl., ¶ 6. Jim Marr became a Senior Director six years before Plaintiff and Mr. Jow, in 2014. Swami Decl., ¶ 5. Finally, Alisdair Maden was even more senior – he became Senior Director in 2012, was promoted to a Vice President (higher than a Senior Director) in 2014 before again assuming a Senior Director role, leaving him with nearly 10 more years' experience than Plaintiff and Mr. Jow at a Senior Director level or higher at Nike. Swami Decl., ¶ 4.

Plaintiff admitted that these individuals' seniority and experience in role, not gender, was the "primary reason why their salary [was] higher than [hers]":

Q.  Okay.  But Jim Marr and Alisdair Maden had both

been senior directors for quite some time?

A.  Jim Marr, you said only a few years.

Q.  Okay.

A.  Alisdair Maden, yes.

Q.  All right.  And **so do you think that's the primary**

**reason why their salary is higher here than yours?**

**A.  Yes,** which is my case in point all together that

had I been a senior director since 2015, my

starting salary -- or my salary would be much

higher.

Pl. Dep., 209:8-18 (emphasis added).

Plaintiff admits that these men were more highly compensated than her (and Mr. Jow) **because of their tenure**.  Indeed, she acknowledges that her own salary would have been higher had her tenure at Senior Director been longer: her "case in point" is that she simply believes her compensation should have been higher as a Senior Director in 2020 because she thinks she should have become a Senior Director in 2015.[7]  That belief, even if correct, does not support her claims.[8]  She does not dispute that during the period of time relevant to her EPA claims, she had less experience in the Senior Director role than her purported comparators who were more highly compensated, and the same experience as Mr. Jow, a purported comparator whose pay was

---

[7] Indeed, Plaintiff claimed that everyone at Nike, men and women, felt their roles should be elevated and they deserved higher compensation, further undermining her claims that she was paid or treated differently than others.  Pl. Dep., 89:3-91:20.

[8] Plaintiff does not have a timely claim based on any alleged discriminatory action prior to September 29, 2021.  Stipulation No. 2.  More importantly, Nike denies that Plaintiff experienced any discrimination prior to that time period, or at any other time.

equivalent to Plaintiff's salary. And she admits that her own salary would have grown with more experience. She cannot show that gender, as opposed to experience and time in relevant role/level, explains any difference in pay to the purported comparators. There is no genuine dispute of material fact that experience, not gender, was the factor that made the difference in Plaintiff's compensation.[9] Plaintiff's EPA claim therefore fails as a matter of law.

## B.    Plaintiff's disparate treatment claims also fail

Plaintiff has two theories of disparate treatment: (1) that her pay was allegedly discriminatory based on her gender; and (2) Nike allegedly refused to promote her because of her gender. The first theory fails for the same reasons as Plaintiff's Equal Pay Act claim, and her second theory fails because Nike hired Plaintiff for the only position at issue within the limitations period. There is no dispute of any material fact, and Nike is entitled to summary judgment dismissing Plaintiff's disparate treatment claims asserted in her Second and Fourth Claims for Relief.

### 1.    Plaintiff's claims that her pay was discriminatory under Title VII and Oregon law fail for the same reasons as her EPA claim.

"To survive a motion for summary judgment, Title VII plaintiffs must first make out a prima facie case of discrimination by showing (1) that they are members of a protected class, (2)

---

[9] To the extent Plaintiff claims her pay as Director of SEC Finance was discriminatory, the undisputed evidence even more forcefully demonstrates otherwise. As discussed above, Plaintiff cannot demonstrate that her Senior Director role was substantially equal to the purported male comparators who held the same position, or overcome her admission that experience explained their pay differences. Plaintiff's role as Director, a step below Senior Director, was even more limited in scope and responsibility and even less like the functions led by the male comparators. Moreover, Plaintiff admits that band level dictates the range of compensation. *See e.g.,* Pl. Dep. 198:16-199:23 (Senior Director roles (S-Band), held by men and women, paid more than Director (E-Band)); Pl. Dep., 209:3-18 (higher band level is higher compensation). Therefore, Plaintiff cannot show any comparable male employees were paid differently than she was as a Director, and even if she could, her experience and band level are legitimate reasons explaining any pay disparity.

Page 14 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
153484252.1 0063718-00403

that they were qualified for their positions and performing their jobs satisfactorily, (3) that they experienced adverse employment actions, and (4) that "similarly situated individuals outside their protected class were treated more favorably." *Goins*, 2026 U.S. App. LEXIS 712, at \*2–\*3, (citation modified).[10] "If a prima facie case is established, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action, after which the burden shifts back to plaintiffs to show that the employer intentionally discriminated." *Id.* at \*3.

Plaintiff cannot make her prima facie showing because she cannot show any similarly situated men were paid more than her. Even if she could, there is no genuine dispute that the reason her pay was different was because of experience, which was a legitimate non-discriminatory reason for any pay differential.

> **a.    Plaintiff's compensation was not different than similarly situated male employees**

To show that they are similarly situated to male comparators, plaintiffs must show that their roles were "similar in all material respects" to those of the comparators. *Goins,* 2026 U.S. App. LEXIS 712, at \*4. In discriminatory pay claims, this showing is similar to the EPA's requirement to demonstrate roles share a "common core of tasks." *Id.* (plaintiffs are similarly situated when they have jobs that "share[] a common core of tasks or perform[] similarly"). Here, as discussed above, Plaintiff cannot show the functional roles held by the purported male comparators - Messrs. Maden, and Marr - shared a common core of tasks with Plaintiff's role in the SEC program, and therefore she cannot show they were similarly situated in all material respects. Indeed, the purported comparator to whom Plaintiff is most closely aligned due to their

---

[10] Oregon law is construed similarly. *H. K. v. Spine Surgery Ctr. of Eugene, LLC*, 305 Or. App. 606, 611, 470 P.3d 403, 406 (2020) (ORS 659A "was modeled after Title VII of the federal Civil Rights Act of 1964, 42 USC § 2000E et seq.," so "Oregon courts look to federal cases construing Title VII for guidance in construing ORS 659A.030 [Oregon's anti-discrimination statute]").

Page 15 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

similar tenure is Mr. Jow, and they received equivalent compensation.  Plaintiff cannot make a prima facie showing that she was paid differently than similarly situated males, and her claim fails for this reason alone.

### b.    Any pay differential was for legitimate, non-discriminatory reasons

Even if Plaintiff could establish a prima facie case (and she cannot), as also discussed in more detail above, Plaintiff admits that experience, not gender, explains why her compensation was lower than men who had years more tenure in role, but the same as Mr. Jow, who had similar tenure as Plaintiff at the Senior Director level.  Plaintiff has no evidence that could show that this legitimate business reason is pretext for intentional discrimination.  Her pay disparity claims under Title VII and Oregon therefore fail as a matter of law, and Nike is entitled to summary judgment.

### 2.    Plaintiff's discrimination-in-promotion claim fails because she cannot identify an open position she did not receive because of her gender

Plaintiff's failure to promote claim is based on a few roles she claims she did not get in 2016 and 2018.  Nike denies Plaintiff's gender played any role in those decisions, but more importantly for purposes of this Motion and Plaintiff's claims, those hiring decisions are outside the limitations period and cannot support Plaintiff's claims.  *See* Stipulation Nos. 1 and 2.

As far as hiring decisions within the limitations period, Plaintiff interviewed but was not hired for two positions, and she admits that Nike's decisions were not based on her gender and do not support her claim.  Stipulation No. 5.  There was only one other position within the limitations period that Plaintiff wanted, Senior Director of SEC Finance, which Nike created in March 2020 and *for which Nike hired Plaintiff*.

Page 16 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff cannot identify an open position within the limitations period into which Nike failed to promote her. There is no genuine dispute of any of these material facts, and Nike is entitled to summary judgment on Plaintiff's failure to promote claims.

## IV.  CONCLUSION

Plaintiff was paid the same as men with similar experience, and less than men with more experience. That is lawful. Her claims that her pay was discriminatory are unsupported by any evidence and are simply based on her subjective beliefs that she should have been promoted sooner and that her role was more important to Nike than it was. As explained in more detail above, Plaintiff's claims fail as a matter of law, and Nike is entitled to summary judgment. Nike respectfully requests the Court grant this Motion.

DATED:  July 6, 2026.                              STOEL RIVES LLP


                                                        *s/ Ryan S. Kunkel*
                                                   LAURA E. ROSENBAUM, OSB No.110061
                                                   laura.rosenbaum@stoel.com
                                                   RYAN S. KUNKEL, OSB No.154671
                                                   ryan.kunkel@stoel.com

                                                   Attorneys for Defendant

Page 17 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT